## Case No. 11,552.

### In re RANDALL et al.

[1 Sawy. 56.] [1]

District Court, D. Oregon. March 7, 1870.

BANKRUPTCY — ILLEGAL PREFERENCES — PAYMENT AFTER PETITION — FORFEITURE — OBJECTIONS TO PROOF OF DEBT.

1. A payment or other disposition of property by a debtor after petition in bankruptcy filed against him, is not a preference, within the meaning of sections 23, 35, and 39 of the bankrupt act [of 1867 (14 Stat. 528, 534, 536)], but simply an unlawful meddling with the property of the assignee, and therefore a nullity.

2. What constitutes a preference under the bankrupt act, and where the taking of a preference will work a forfeiture of the debt of the creditor taking the same.

3. Objection to the proof of debt must be made by the assignee, unless the court for cause otherwise directs.

On January 9, 1869, [E. G.] Randall and [John] Sunderland being insolvent assigned all their property to Foster with intent to evade the bankrupt act. On January 30, the firm of Einstein Bros. & Co., doing business in San Francisco, filed a petition in bankruptcy in this court against R. and S., praying that they might be adjudged bankrupts on account of such assignment; and on February 27, after a hearing upon the petition and answer thereto, R. and S. were duly adjudged bankrupts for the causes stated in the petition. [Case No. 11,551.] Afterwards, Einstein Bros. & Co. having proved their debt, amounting to $6,183.56, Winfield Peters, a creditor who had also proved his debt, moved the court to reject the claim of Einstein Bros. & Co. for reasons stated in his objections, then filed thereto. Thereupon an order was made referring the matter to Mr. Register Hill with leave to Einstein Bros. & Co. to answer the objections within a certain time. Before the register, Einstein Bros. & Co. answered the objections to their claim, and the objecting creditor demurred to such answer. The register reported, in effect, that the objections were not well taken, and that the motion to reject ought not to be allowed.

E. D. Shattuck, for the motion.

Lansing Stout and D. Freidenrich, contra.

DEADY, District Judge. This is a motion by a creditor to reject a claim of another creditor, as being illegal.

From the report of the register it appears that on February 2, 1869, Einstein Bros. & Co. received at San Francisco, $450, in coin, from Foster on account of R. and S., and that they had good reason to believe at that time that R. and S. were insolvent; and that their attorney, then resident in Portland, acting under instructions to take such course as their interests required, had on January 30, commenced the procedings in

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

bankruptcy wherein R. and S. were adjudged bankrupts; and that before the objections of said Peters were filed said Einstein Bros. & Co. had offered in writing to surrender to the assignee of the estate of R. and S. the said sum of $450, and that afterward they paid said sum to said assignee.

For the objecting creditor it is claimed that this case comes within section 39, and that therefore the debt is forfeited and should not be proved.

That section provides, among other things, that an insolvent debtor who makes any payment with intent to give a preference to one or more creditors, shall be deemed to have committed an act of bankruptcy, and upon the petition of certain creditors may be adjudged a bankrupt therefor—"provided such petition is brought within six months after the act of bankruptcy shall have been committed. And if such debtor shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid * * * provided, the person recovering such payment * * * had reasonable cause to believe that a fraud on this act was intended and that the debtor was insolvent, and such creditor shall not be allowed to prove his debt in bankruptcy." In the case under consideration the payment was made after the petition was filed and therefore not within six months prior thereto. Neither was such payment the act of bankruptcy on account of which such petition was brought and adjudication had.

Taken as it reads, this section does not include the case of a payment after petition brought. In morals, I admit that there is no difference between a creditor who takes a preference before petition filed or afterwards, and on this ground it has been argued for the motion to reject that as this preference is within the mischief intended to be prevented by the section, it should be construed so as to include it. If the premises were admitted the conclusion might follow.

So far as the creditor is concerned, a payment or transfer of property by a debtor, after petition brought, is a mere nullity, and the same or its value may be recovered back by the assignee, independent of sections 23, 35, or 39, because from the commencement of the proceedings in bankruptcy, by operation of law, the property of the bankrupt of whatever nature, not exempt from execution, vests in the assignee, and therefore the former can make no valid disposition of it. Bankrupt Act, § 14. Einstein Bros. & Co. acquired no property or interest in the money paid or delivered them by Foster. They were mere bailees of it, and the assignee could have compelled them to return it or its value, without reference to their claim against the estate. Besides this, the debtor making a payment or transfer after petition brought, is liable to be punished by imprisonment at hard labor for not exceeding three years. Id. § 44.

A payment or other disposition of property by a debtor after petition brought against him is not a preference within the meaning of the act, but simply an unlawful meddling with the property of the assignee. It confers no rights or interest on the party receiving it, and renders the debtor liable to imprisonment.

Preferences are provided for in sections 23, 35, and incidentally in section 39.

By section 23, a person receiving a preference "any time after the approval of the act" having reasonable cause to believe that the same was made or given by the debtor contrary to the act, shall not prove the debt on account of which such preference was given, until he surrenders to the assignee all benefit received by him under such preference. By its terms this section includes all preferences whenever made or given, and leaves it optional with the creditor to surrender and prove his debt, or retain his preference and be excluded from making such proof. But as will be seen, section 35 necessarily limits the operation of this section to cases of preference received more than six months prior to petition brought, because section 35 declares all preferences made within this latter period absolutely void; and as by section 14 all the property of the bankrupt is vested in the assignee from the time of filing the petition against him, this section cannot be construed to apply to the case of a payment or other disposition of property by the bankrupt after such filing, because the same would be void for want of interest in the bankrupt, and could not give the creditor the option to surrender or retain it.

By section 35 all payments or other disposition of property by an insolvent debtor, made "within six months before the filing of the petition by or against him" are declared void, and the assignee may recover the same as assets of the bankrupt.

All payments or other dispositions of property within the purview of this section are void, and the person or creditor receiving them cannot retain or surrender them at his option, as in the case of a preference within the purview of section 23; but no penalty is imposed upon him for receiving the same.

Section 39 goes farther, and after providing for what causes and under what conditions a debtor may be adjudged a bankrupt, declares that the creditor receiving the preference, and thereby participating in the fraud which constituted the act of bankruptcy for which the adjudication was had, shall not be allowed to have his debt.

In Re Princeton [Case No. 11,433], Mr. Justice Miller, of the Wisconsin district, suggests the reason why section 39 imposes a forfeiture of the debt upon the creditor taking a preference, contrary to it. He says:

"This prohibition as to the creditors (forbidding the proof of their debts) is predicated on the adjudication in bankruptcy upon the allegation in the petition against the debtor. And the creditor, having reasonable cause to believe the alleged violation of the act by the debtor, is considered a participant in the offense against the act, and is, therefore, prohibited from proving his debt in bankruptcy. * * * It cannot be permitted to a creditor, who, with reasonable cause of knowledge, has participated in such fraud on the act as to found a proceeding against his debtor, to relinquish his intended preference, and claim to prove his debt under the 23d or any other section of the act."

This reasoning seems to assume, rather than to assert, that the forfeiture imposed by this section is confined to the case of a creditor who received a preference which constituted the very act of bankruptcy upon which the adjudication was had.

The language of the last clause of the section gives some color to this conclusion. It declares, "The assignee may recover back the money or other property so paid, conveyed, sold, assigned or transferred, contrary to this act,"—that is the money paid by the insolvent debtor to the creditor, with intent to give a preference, and which payment constituted the very act of bankruptcy in controversy,—"provided the person receiving such payment * * * had reasonable cause to believe, etc., * * * and such creditor shall not be allowed to prove his debt, etc." Apparently, these expressions—"the money" —"so paid"—"such payment" and "such creditor," relate or refer to the money or payment which constituted the act of bankruptcy for which the petition was brought, and to the person or creditor who received such money or payment, and thereby became a participant in the fraud for which the debtor was adjudged a bankrupt. But I am not satisfied that the clause should be so limited in its operations. Indeed, it appears but just and reasonable that it should apply to any creditor who has taken a preference "contrary to the act," within six months before petition brought, although such preference did not constitute the act of bankruptcy for which the adjudication was had, provided the person receiving such preference, does not voluntarily relinquish the same, but puts the estate to the trouble and expense of recovering the property, or its value, by legal proceedings. The reasons for forfeiting the debt in the case supposed, are equally as cogent as any that can be given in the case of the creditor whose preference constituted the act of bankruptcy. In each case, the creditor's conduct has been illegal, and in addition to this, innocent parties have been thereby put to unnecessary trouble and expense, to obtain their rights.

It may be necessary, to support this view of the section, that the words of the last clause—"the money or other property so paid, etc.,"—should be construed to read— "any money or other property so paid, etc."

However this may be, one thing seems certain. This case is not within any of these

sections, regulating the subject of preferences. From what appears in the case of R. & S., I suppose that Foster sent this money in the course of business, to Einstein Bros. & Co. before petition filed, and that the latter received it afterwards from the express, without knowledge of such filing—the petition having been brought by their attorney. They could not well help receiving the money from the express, but as soon as they could conveniently, they delivered it to the assignee.

The motion to reject the claim, must be denied at the cost of the objecting creditor.

It will be observed that this proceeding is not taken by the assignee, but by a creditor. No objection has been made to it upon that ground, and for the present, it may be considered as well taken. But upon reflection, I am quite satisfied that the act does not contemplate that every creditor shall have the right to object to every other creditor's claim. This, it appears to me, is the proper business of the assignee, who represents the estate, and all parties interested. Otherwise, the door is opened wide to any and every petty, factious creditor, who cares more for controversy than for his debt, to delay and harrass the substantial creditors, and unnecessarily prolong the settlement of the estate.

Sufficient guards are thrown around the choice of an assignee, and his administration of the bankrupt's property, to justify his being entrusted, in the first instance at least, with the duty of ascertaining what claims require further investigation, and what do not. Again, if any creditor felt himself aggrieved by the action of the assignee in this respect, he might apply to the court for a rule upon the assignee, requiring him to take the proper action in the premises, or to allow the creditor to do so in the name of the former. The court has a supervisory control over the assignee, and when "necessary or expedient," may remove him. Bankrupt Act, § 18.

Section 23 provides for the postponement of the proof of the claim, before the election of assignee, but the only provision of the act on the subject under consideration, is found in the last clause of section 22. It reads:

"The court may, on the application of the assignee, or of any creditor of the bankrupt, or without any application, examine upon oath the bankrupt, or any person tendering or who has made proof of claims, and may summon any person capable of giving evidence concerning such proof, or concerning the debt sought to be proved, and shall reject all claims not duly proved, or when the proof shows the claim to be founded in fraud, illegality or mistake."

This only gives a creditor a right to apply for leave to examine the bankrupt or other creditor on oath, touching any matter pertinent to his interest in the estate. The court is required "to reject all claims" of a certain character, but at whose instance is not specifically prescribed. It may be that the court—ex mero motu—may reject a claim or may direct an inquiry concerning the legality of the same. But as between third persons, the analogies of other similar legal proceedings, as in the case of an administrator, and the speedy and economical settlement of bankrupts' estates, all point to the assignee as the proper person to make the application or objection. If the contrary course were permitted, there would be danger of the proceedings degenerating into a many-sided, interminable squabble between the creditors, to the real benefit of no one, and the delay and injury of all concerned.